STATE OF NORTH CAROLINA v. JONAH RAY STRICKLAND AND WILLIAM McKINNIE

No. 738SC677

(Filed 9 January 1974)

Receiving Stolen Goods § 5— receiving stolen pigs — sufficiency of evidence

Defendants' motion for nonsuit on the charge of receiving stolen goods, knowing them to have been stolen, should have been allowed where the evidence tended to show that nine pigs were stolen by defendants and there was no evidence tending to show that the pigs were stolen by others and then received by these defendants with knowledge that they had been stolen.

APPEAL by defendants from *Lanier, Judge,* 26 March 1973 Session of Superior Court held in WAYNE County.

Defendants were tried for nonfelonious larceny of nine pigs valued at $140.00 and for unlawfully receiving stolen property, the same nine pigs.

The State's evidence tended to show the following. On 26 May 1972, R. E. McCullen discovered that nine feeder pigs, each weighing about 70 pounds, had been taken from his hog pen. One of the pigs had an unusual marking in the shape of an "M" on its left side. The marking was white on black. The other pigs were black with white band-like markings around their necks. All the markings on the pigs were natural, and the livestock had not been branded or tagged for identification purposes.

During the course of his investigation of the theft, James M. Sasser, a Wayne County Deputy Sheriff, called Nahunta Hog Market and was informed that Mack Pierce had purchased several 70-pound hogs on 26 May 1972. McCullen and his son, Randy McCullen, identified nine of the pigs as the ones taken from McCullen's pen. Included in this group was the hog with a natural "M" on its left side. Defendants had sold the animals to Pierce on the same day that McCullen learned they had been taken from his pen.

Pierce testified that the market purchases pigs for slaughter and that he paid defendants the going price of twenty cents a pound or $140.00 for the nine pigs. Pierce had seen both defendants at the market on previous occasions and had bought livestock from defendant McKinnie in the past. With respect to the 26 May 1972 transaction, Pierce did not ask and defendants did not say where or how they obtained the pigs. Defendants arrived at the market in two automobiles and had the pigs in the car trunks. Pierce testified that it was not unusual for sellers to transport pigs in this manner. He further stated:

"I have bought pigs from William before. As to the question of whether or not I thought why in the world somebody was selling feeder type for 20 cents a pound when they were worth 60 cents a pound in the slaughter business we can kill a feeder pig just as well as we can kill a slaughter pig. I didn't have any thoughts in mind about somebody selling pigs that were worth 50 to 60 cents a pound for 20 cents. If you want to sell the pigs I will buy them. . . . I can't say any specific number as to how many people I have had coming in there selling pigs like that for 20 cents a pound. We buy a lot of pigs, off-grade pigs, feeder pigs. I recognized that they were real nice pigs. . . . It is not unusual for somebody to come there and sell me feeder pigs that are worth 50 to 60 cents a pound if that's the slaughter price. Not if they need the money. I'm the only one in the county. They sell feeder pigs at Rocky Mount and Mount Olive they are the only places they sell feeder pigs."

Defendants offered no evidence. Defendants were found not guilty of larceny. They were found guilty of nonfeloniously receiving stolen property. Both defendants were sentenced to prison terms of two years.

*Attorney General Robert Morgan by R. Bruce White, Jr., Deputy Attorney General and Guy A. Hamlin, Assistant Attorney General, for the State.*

*George F. Taylor for defendant appellants.*

VAUGHN, Judge.

The unexplained possession of recently stolen property raises a presumption of fact tending to show that the possessor is guilty of larceny. There was sufficient evidence in this case to have sustained a verdict of guilty as to each defendant on the charges of larceny. Nevertheless, the jury acquitted each defendant of larceny. Defendants contend that the evidence was not sufficient to carry the cases to the jury on the charges of receiving stolen goods, knowing them to have been stolen.

The possession of stolen property, without more, does not raise a presumption that those in whose possession the goods are found immediately after the larceny are guilty of receiving the stolen property knowing it to have been stolen. "[T]he crime of receiving presupposes, as an essential element of the offense, that the property in question had been stolen by someone *other than* the person charged with the offense of receiving. . . . " *In re Powell,* 241 N.C. 288, 84 S.E. 2d 906.

In the case before us, the evidence tends to show that the pigs were stolen by defendants. There is no evidence tending to show that the pigs were stolen by others and then received by these defendants with the knowledge that they had been stolen. Defendants' motion for nonsuit on the charges of receiving stolen goods, knowing them to have been stolen should have been allowed. *State v. Neill,* 244 N.C. 252, 93 S.E. 2d 155.

Reversed.

Judges CAMPBELL and BRITT concur.